**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JEFFERY A.,

                                Plaintiff,

        v.                                       3:18-CV-1473
                                                  (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

_____

**APPEARANCES:**                      **OF COUNSEL:**

Lachman, Gorton Law Firm        PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for plaintiff

Social Security Administration      KEVIN MICHAEL PARRINGTON, ESQ.
625 JFK Building
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

## MEMORANDUM-DECISION & ORDER[1]

Plaintiff Jeffery A.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("Commissioner" or

"defendant") denying his applications for disability and disability insurance benefits.

---

[1] Parties consented to review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 6.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify plaintiff by first name and last initial.

Plaintiff moves for a finding of disability, and the Commissioner cross moves for a judgment on the pleadings. Dkt. Nos. 9, 15. For the following reasons, plaintiff's motion is granted.

## I. Background[3]

Plaintiff was born on February 22, 1977, and has a tenth grade education. T 47-48. Plaintiff lives with his wife and three children. Id. On September 14, 2015, plaintiff protectively filed an application for supplemental security income, alleging disability beginning on May 1, 2015. Id. at 134. His claim was denied initially on December 31, 2015. Id. at 76. Plaintiff requested a hearing, and a hearing was held on January 12, 2018, before Administrative Law Judge ("ALJ") Jeremy J. Eldred. On February 23, 2018, the ALJ rendered an unfavorable decision. Id. at 13-19. On October 26, 2018, the Appeals Council denied plaintiff's request for review, making the findings the final determination of the Commissioner. Id. at 1-6. Plaintiff commenced this action on December 20, 2018. See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not

---

[3] References to the administrative transcript will be cited as "T" and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript. All other citations to documents will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the original documents.

determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original)(internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation

omitted); <u>Venio v. Barnhart</u>, 213 F.3d 578, 586 (2d Cir. 2002).

## B.  Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  <u>Id.</u> § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  <u>Id.</u> § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  <u>Id.</u> § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  <u>Ventura v. Barnhart</u>, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

Next, an ALJ is to assess the degree of functional limitation, or the impact the claimant's mental limitations have on the claimant's "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c). The ALJ must assess the claimant's degree of functional limitation in four functional areas: (1) "[a]ctivities of daily living," (2) "social functioning," (3) "concentration, persistence,

and pace," and (4) "episodes of decompensation." Id. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must "rate" the functional degree of limitation in each of these four areas as "[n]one, mild, moderate, marked [or] extreme." Id. §§ 404.1520a(c)(4), 416.920a(c)(4). If the ALJ finds the degree of limitation in each of the first three areas to be "mild" or better and identifies no episodes of decompensation, the ALJ "will generally conclude" that the plaintiff's impairment is "not severe." Id. § 404.1520a(d)(1). Where the claimant's mental impairment is "severe," the ALJ must "determine if it meets or is equivalent in severity to a listed mental disorder." Id. § 404.1520a(d)(2). "If yes, then the [plaintiff] is 'disabled.'" Petrie, 412 F. App'x at 408 (quoting 20 C.F.R. § 404.1520a(d)(2)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). The Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since September 14, 2015, the application date. T at 15. The ALJ found at step two of the sequential evaluation that plaintiff had the severe impairments of lumbar radiculopathy, upper extremity tremors, and renal cysts. Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 416.967(b), except he can perform fine motor activities only occasionally." Id. At step four, the ALJ determined that plaintiff was not capable of performing his past relevant work. Id. at 17. Considering plaintiff's RFC, age, education, and work experience, together with the Medical-Vocational Guidelines, the ALJ further concluded that there were "jobs that exist in significant numbers in the national economy that the claimant can perform." Id. The ALJ, considering testimony from a vocational expert ("VE") determined that plaintiff could perform the requirements of representative occupations such as information clerk, cafeteria attendant, and usher, which exist in significant numbers in the national economy. Id. at 18-19. Therefore, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, from April 15, 2016, through the date of this decision[.]" Id. at 19.

**D. Arguments**

Plaintiff argues that the ALJ (1) improperly assessed the opinion evidence from consultative examiner Dr. Gilbert Jenouri and treating Nurse Practitioner Maria Berry; (2) improperly substituted his judgment for that of the undisputed medical opinions; (3) improperly assessed limitations with fine motor activity; and (4) presented an incomplete hypothetical to the VE, resulting in a step five determination unsupported by substantial evidence. Dkt. No. 9.[4]

Defendant argues that substantial evidence supports the ALJ's RFC finding that plaintiff could perform light work with occasional fine motor activities. Dkt. No. 15 at 7. Defendant next contends that the ALJ did not err in his assessment of Dr. Jenouri and Nurse Berry's opinions. Id. at 15-19. Finally, defendant asserts that the step five determination is supported by substantial evidence. Id. at 20.

**E. Analysis**

**1. Consideration of Neurological Records**

Plaintiff argues that the ALJ and Appeals Council committed reversible error because they failed to consider all of the neurological records. Dkt. No. 9 at 3. Plaintiff contends that he "properly submitted all of the records from the neurologist . . . to the ALJ one month before the hearing and yet for some reason the staff of the ALJ neglected to exhibit [the records]." Id. Plaintiff argues that the omission is prejudicial because the ALJ indicated, as "part of his reason for not accepting the testimony of the

_____

[4] Plaintiff repeats these arguments in his reply. Dkt. No. 16-1.

Plaintiff and the opinion of the nurse practitioner that Plaintiff could not use his [sic][5] up to 1/3 of the day were [sic] that those records didn't exist." Id. at 4. Plaintiff asserts that,

> there is a reasonable probability that, had the ALJ known that there was ongoing neurological treatment, he would have assessed greater limitations to fine motor skills (and possibly reaching and handling as well). This is particularly true because the more recent records from Dr. Alwan (the treating neurologist) show continued tremors and an instance of Plaintiff's legs giving out from under him. Dr. Alwan ordered electrodiagnostic studies of the lower limbs given complaints of numbness and cramping in the lower limbs and a neuropathy panel.

Id. at 12. Finally, plaintiff argues that, regardless, no evidence shows that any further treatment or remedies would have helped plaintiff's tremors. Id. at 10-11.

Defendant argues that any failure by the ALJ or Appeals Council to consider the full neurology records is harmless error. Dkt. No. 15 at 12-13. First, defendant disputes plaintiff's contention that the records were timely submitted to the ALJ before he issued his decision, noting that this conflicts "with his attorney's statement to the ALJ at the administrative hearing that the record was complete." Id. at 13 n.6. Second, defendant argues that the "recent" neurology records omitted from the exhibit list did not show "recent ongoing care with a neurologist," but three "appointments with Dr. Alwan in April 2016, June 2016, and January 2017 – more than a year before the ALJ's February 2018 decision." Id. at 12-13. Defendant notes that the neurology treatment notes from

---

[5] It appears that the word that was inadvertently omitted here is likely "hands."

February 2016 and earlier were part of the record before the ALJ.  Dkt. No. 15 at 13.[6]

Third, defendant contends that, "[p]utting aside whether any additional treatment or remedies would have helped, the lack of treatment with a neurologist suggests that Plaintiff did not report any new or worsening symptoms in the months before the ALJ's decision."  Dkt. No. 15 at 13.

It is unclear to the Court whether plaintiff timely submitted the additional neurology records to the ALJ.[7]  Although the ALJ relied in part on the absence of recent neurology treatment, the additional records do not show that plaintiff reported a worsening of his tremors or other conditions related to his fine motor activity or that there was any change in his neurological treatment.[8]  Insofar as plaintiff suggests that the Court should assume that Dr. Alwan's ordering of electrodiagnostic studies based on complaints of lower leg issues may have led the ALJ to include greater neurological limitations, this argument is entirely speculative, as the omitted records do not include any results of that testing, merely that it was ordered.  Dkt. No. 9 at 12.  Further,

_____

[6]  Plaintiff provides that "substantial records from the neurologist consisting of 17 pages December 14, 2015 through January 13, 2017 have been properly submitted to the ALJ December 18, 2017 (Tr. 24), since they were not part of the exhibit list they were resubmitted to the Appeals Council. Dkt. No. 9 at 12.  However, the only neurological records not included in the record before the ALJ are three appointments, April 2016, June 2016, and January 2017.  T at 25-30.  All other treatment notes were before the ALJ and considered.

[7]  Plaintiff points to the hearing transcript stating that the record is complete and suggests that the ALJ must have failed to include the full records, but defendant argues that plaintiff's statement that the record is complete indicates that he had not submitted those records as they would have been included.

[8]  The January 13, 2017 treatment record notes that plaintiff "continues to have tremors, although they do not appear to have worsened."  T at 25.  It notes mild postural tremor with outstretched hands, no evidence of resting tremor, bradykinesia, or cogwheel rigidity; normal finger-nose-finger testing, gait grossly normal, overall generalized tremulous, no clear evidence of spastic gait.  Id. at 25-26.  Also included with the additional records is a June 27, 2016 treatment note where plaintiff reported that his tremors have "gotten worse."  T at 39.

although the January 13, 2017, neurology treatment note indicated that plaintiff reported muscle cramping in his thighs, numbness in his feet, and that he told Dr. Alwan that his legs "dropped out from underneath him" on one occasion, overall, his examinations are largely normal and comparable to those submitted earlier, especially as it relates to fine motor skills. T at 25. Indeed, the records show that plaintiff had "mild postural tremor with outstretched hands"; no evidence of resting tremor, bradykinesia, or cogwheel rigidity; normal finger-nose-finger testing; and his gait was grossly within normal limits. Id. at 26. On June 27, 2016, plaintiff indicated a worsening of his tremors and "a wearing off effect of the medication," but the doctor noted no new symptoms; no change in gait; mild-to-moderate postural tremor with outstretched hands; "strength otherwise appears to be 5/5; no resting tremor, bradykinesia or cogwheel rigidity; normal finger-nose-finger testing; gait within normal limits; and Dr. Alwen increased plaintiff's dose of Sinemet. Id. at 28. The April 1, 2016, appointment note showed that plaintiff had "significant improvement with usage of Sinemet," denied major adverse side effects, medication lasted long and was effective, and he was "quote content with the current degree of tremor control." Id. at 29. Thus, despite the newly self-reported symptom of leg numbness, for which the additional neurological records include no objective findings, test results, or change in treatments, the three omitted treatment records from neurologist Dr. Alwan do not show any significant worsening or clear change in treatment. Therefore, although it is unclear whether plaintiff timely submitted the additional records, even if the Court assumes that such records were timely, it is not reversible error if the ALJ (or an administrative employee)

accidentally declined to include them in the record.  Further, assuming for purposes of this review that the question of whether the Appeals Council's decision to decline to reopen the record is properly before this Court,[9] as its decision that the additional treatment records would be unlikely to change the ALJ's decision is supported by substantial evidence, such is also not ground for remand.

## 2. Fine Motor Activity

Plaintiff next argues that the ALJ misunderstood certain terms in the neurology records, specifically those involving the use of hands.  Plaintiff argues that the ALJ: (1) "misunderstands the significance of the finger-nose test" which "assesses upper extremity 'coordination;' not fine motor skills.  Thus, the ALJ misapprehends the medical significant as this test is largely unrelated to Plaintiff's fine motor activities; and (2) improperly relies on the fact that plaintiff did not demonstrate "resting tremors."  T at 11, 13.

Defendant counters by arguing that the ALJ appropriately considered the finger-nose-finger testing and disputes plaintiff's argument that such testing would not show difficulty with fine motor activities.  Dkt. No. 15 at 12.  Similarly, defendant contends that the lack of resting tremors is an appropriate consideration because resting tremors "can occur with parkinsonism – of which Dr. Alwan saw no clear evidence – or severe

---

[9] Edwards v. Comm'r of Soc. Sec., No. 00 CIV. 6705 (LBS), 2003 WL 21018851, at *1 n.1 S.D.N.Y. May 5, 2003) ("42 U.S.C. § 405(g)-(h) provides for judicial review of a decision of the Commissioner of Social Security only after a 'final decision.'  Stieberger determinations, which do not involve any hearings, are not "final decisions" within the meaning of the statute. 42 U.S.C. § 1383(c)(3). Judicial review of the denial of an application to reopen a claim is otherwise appropriate only in rare circumstances not at issue here.  See Stieberger v. Apfel, 134 F.3d 37, 39 (2d Cir. 1997).")

essential tremor." <u>Id.</u> at 14.  Thus, defendant argues that

> the lack of resting tremors, combined with Plaintiff's normal
> finger-nose-finger testing, and Dr. Alwan's descriptions of
> the tremors in October 2015 as 'mild[,]' February 2016 as
> 'unchanged[,]' and January 2017 as 'mild[,]' support the
> ALJ's decision that the tremors, while limiting, would not
> prevent Plaintiff from performing fine motor activities for up
> to two hours of an eight-hour workday.

<u>Id.</u> (internal citations omitted).

Instead of reviewing whether the ALJ's interpretation of the finger-nose-finger

test was medically proper, an assessment that is not appropriate for the Court to make,

the Court will assess whether the ALJ's interpretation of the opinions regarding fine

motor activities was based on substantial evidence.[10]  The ALJ observed that at the

consultative examination, plaintiff's "hand and finger dexterity were intact and his grip

strength was normal."  T at 17.  Further, he reviewed in detail the medical records,

which show repeatedly that plaintiff's hand tremors were described by his treating

neurologist as mild, with intact hand and finger dexterity, and full grip strength.  <u>Id.</u> at

16-17.  Specifically, the ALJ noted that Nurse Berry's records indicated that plaintiff had

no motor or sensory deficits and full range of motion in his extremities.  <u>Id.</u> at 17.

Although Nurse Berry set forth restrictive limitations that the ALJ accorded "little weight,"

including her limitation with fine motor activity in both hands to "less than 1/3 of each

working day," Nurse Berry does not explain the need for these limitations.  As will be

---

[10]  The parties' citations to materials outside of the record (and of varying degrees of reliability) to explain the relevance or irrelevance of resting tremors and finger-nose-finger testing are of little use to the Court.  However, the Court takes judicial notice that resting or passive tremors is defined by Steadman's Medical Dictionary as "a course, rhythmic t., 3-5 Hz frequency, usually confined to hands and forearms, which appears when the limbs are relaxed and disappears with active limb movements characteristic of Parkinson disease." 2024 STEADMAN'S MEDICAL DICTIONARY (28th ed 2006).

detailed below, the ALJ's s failure to give greater weight to Nurse Berry's limitations to fine motor activity is supported by substantial evidence. Further, the other medical opinion of record, Dr. Jenouri, noted on examination that plaintiff's hand and finger dexterity were in tact and that he had full grip strength. Id. at 17. Regardless, the ALJ's RFC limits plaintiff to only occasional fine motor activities, adequately accounting for limitations in fine motor activities. Id. Accordingly, the Court finds no reversible error in the ALJ's assessment of plaintiff's fine motor activities.

### 3. Opinion Evidence

### a. Maria Berry, FNP

The ALJ assigned little weight to Nurse Berry's opinion. T at 17. Ms. Berry completed a check-box questionnaire on November 24, 2017. Nurse Berry's questionnaire indicated that plaintiff's unspecified conditions/side effects would cause plaintiff pain and fatigue, diminished concentration, and diminished work place. Id. at 297.[11] She provided that plaintiff's "pain, fatigue, diminished concentration or work pace or need to rest" would cause plaintiff to be off task more than 33% of the day. Id. She further indicated that his "conditions" could be expected to produce good days and bad days. Id. at 297-98. Finally, she provided that his "bad days" would lead to missing more than four days of work per month. Id. at 298. For side effects, Nurse Berry indicated that his prescribed muscle relaxant "can cause fatigue." Id. She indicated that

---

[11] Ms. Berry did not provide an answer to the question asking whether his "conditions" would cause plaintiff to need rest at work. T 297.

plaintiff could need to change positions every ten to fifteen minutes when sitting, alternate between sitting and standing every fifteen minutes, and could "walk 15 min[utes] on the hours." Id. Further, Nurse Berry provided that plaintiff could lift five to ten pounds occasionally, defined as up to one-third of the day. Id. She indicated that plaintiff could use his right and left hands for fine motor activity for less than one-third of a work day and use both hands and arms for reaching and handling for less than one-third of a work day. Id. at 299. Nurse Berry concluded that her answers applied from July 3, 2017 to November 14, 2017. Id. The ALJ's decision indicates that Nurse Berry "cited to no objective medical evidence to support her opinions." Id. at 17. Further, he provides that Nurse Berry's "most recent treatment records state that the claimant, despite complaints of back pain, has no motor or sensory deficits, and has full range of motion in all extremities." Id.

Plaintiff argues that the ALJ's assessment of Nurse Berry is reversible error "because a lack of specific clinical findings is not, by itself, a reason to justify an ALJ's failure to credit the opinion." Dkt. No. 9 at 15 (citing Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). Further, plaintiff contends that, before according Nurse Berry little weight, the ALJ "was required to use the applicable regulatory factors to weigh medical opinions to consider that she personally examined plaintiff, has an ongoing treating relationship," and that her opinions "are well-supported by the medical evidence" and "consistent with the record as a whole, including that of the only other medical opinion of record." Id. Finally, plaintiff argues that the ALJ's failure to incorporate Nurse Berry's opined limitations is prejudicial because she finds limitations

greater than those set forth in the RFC.  Id.

The Court concludes that the ALJ's assessment of Nurse Berry's opinion is supported by substantial evidence.  First, as a nurse practitioner, Nurse Berry, although a treating medical source, is not an acceptable medical source.  See 20 CFR § 404.1513(a), (d)(1); SSR 06-03p, 2006 WL 2329939, at *2-3 (S.S.A. 2006)[12]; Barnaby v. Comm'r of Soc. Sec., 8:17-CV-0399 (GTS/WBC), 2018 WL 4522057, at *7 (N.D.N.Y. June 6, 2018) (quoting Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order)) ("[A]n ALJ is 'free to consider' statements of other sources, such as nurse practitioners, in making her overall assessment; however, 'those opinions do not demand the same deference as those of a treating physician'").  However, the ALJ did not reject Nurse Berry's opinion on this ground; rather, because he concluded that her opinion was not supported by objective medical evidence and contradicted her most recent treatment records.  T at 17.

Second, plaintiff refers to Nurse Berry's diagnosis of Parkinson's Disease as support for his claims regarding tremors and greater limitations on fine motor activities, dkt. no. 9 at 7, 13[13]; however, the Regulations require a diagnosis by an acceptable medical source in order for a condition to be a medically-determinable impairment.  See 20 C.F.R. § 404.1508.  Further, as defendant points out, Nurse Berry first refers to Parkinson's Disease be based on plaintiff's apparent self-reporting that he had been

---

[12] This regulation remains in effect for all claims filed before March 27, 2017, including plaintiff's claim.

[13]  Plaintiff states that the ALJ "never even mentions" this diagnosis. Dkt. No. 9 at 13.  However, for the reasons discussed above, the Court finds no reversible error in failing to address Nurse Berry's diagnosis.

diagnosed with this condition. Beyond Nurse Berry's treatment notes, there appears to be no other medical opinion in the record officially diagnosing plaintiff with Parkinson's Disease. Significantly, Dr. Alwan, plaintiff's treating neurologist, concluded that plaintiff demonstrated "[n]o clear Parkinsonian features on his exam" and "no clear evidence of Parkinsonism." Dkt. No. 15 at 5 (citing T at 301).

Third, the ALJ provided extensive reasons for his rationale in according Nurse Berry's opinion little weight. In so doing, the ALJ noted that Nurse Berry's opinion did not cite to objective medical evidence to support her conclusions of limitations. Indeed, several of Nurse Berry's treatment records do not support such significant limitations to plaintiff's abilities to stand, walk, sit, lift, use of hands/arms. Although Nurse Berry does note that plaintiff complains of leg numbness/weakness, difficulty walking, back pain, and constant tremors, back pain, and abnormal gait (on two occasions), T at 263, 266, 270, 272, 275, he was also noted as having normal gait and station, full range of motion in extremities, normal digits and joints of extremities normal coordination (normal finger to nose and heel to shin test). Id. at 253, 272, 277. Accordingly, although plaintiff argues that Nurse Berry should have been given greater weight, the ALJ's assessment and accordance of little weight to her opinion, which he explains in great detail, is supported by substantial evidence.

### b. Dr. Jenouri

Plaintiff first argues that, despite indicating that he was according consultative examiner Dr. Jenouri's opinion "significant weight," the ALJ inexplicably declined to

17

adopt – or explain his rejection of – Dr. Jenouri's opined "moderate to marked" restrictions in walking, standing, sitting for long periods; bending, stair climbing, lifting, and carrying. Dkt. No. 9 at 9. Plaintiff contends that the "ALJ finds essentially no restriction to sitting, standing or walking because he finds that Plaintiff can sit, stand and/or walk up to 6 hours per day [sic] does not have any work related limitations in those areas of functioning." Id. Defendant argues that by assigning plaintiff to light work, the ALJ "found that Plaintiff had limited ability to sit for prolonged periods, stand, and walk" as light work "by its very definition, involves limitations on standing and walking." Dkt. No. 15 at 8. Defendant further argues that finding moderate to marked limitations does not preclude the performance of light work. Id. at 9. Defendant contends that light work is also compatible with limitations in bending as it does not require any crouching and only occasional stooping. Id. Defendant also notes that objective medical evidence – including plaintiff's May 2015 lumbar MRI and normal gait, sensory, and gross motor examinations – supports the ALJ's conclusion that plaintiff could perform light work. Id. at 10.

Dr. Jenouri's physical examination noted that plaintiff's hand and finger dexterity were intact and he had five out of five grip strength, bilaterally. T at 255. Dr. Jenouri noted full flexion, extension, and lateral flexion bilaterally and full rotary movement bilaterally in plaintiff's cervical spine; 10 degrees lumbrosacral spine extension, flexion 40 degrees, lateral flexion: left 30 degrees, right 30 degrees; rotation: right and left 25 degrees. Id. Plaintiff had full ROM of his shoulders, elbows, wrists, and hands, bilaterally. Id. He had full flexion and extension of knees, bilaterally. Id. Hip flexion

18

and extension: 30 degrees right and left; rotation, interior, right 30 degrees, left thirty degrees; exterior, right and left 40 degrees; backward extension, right 20 degrees, left 20 degrees; abduction, right 30 degrees, left 30 degrees; adduction, right 10 degrees, left 10 degrees. Id. Plaintiff's ankle dorsiflexion was right and left 15 degrees and his plantar flexion was right and left 30 degrees. Id. Plaintiff had no evident subluxations, contractures, ankylosis, or thickening, with stable and nontender joints, and no redness, heat, swelling, or effusion. Id. Dr. Jenouri's prognosis for plaintiff was stable. Id. at 256.

Plaintiff is correct that the ALJ did not address Dr. Jenouri's conclusions of "moderate to marked" restrictions on standing, walking, sitting for long periods, bending, stair climbing, lifting, and carrying. T at 17. Indeed, it is unclear whether the ALJ adopted or rejected this portion of the opinion. Id. As an initial matter, the Court acknowledges that the ALJ's adoption of only a portion of an opinion was not inherently improper; indeed, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); see also Tennant v. Comm'r of Soc. Sec., No. 6:16-CV-360 (DJS), 2017 WL 1968674, at *8 (N.D.N.Y. May 10, 2017); Allen o/b/o Allen v. Comm'r of Soc. Sec., No. 5:16-CV-1207 (WBC), 2017 WL 6001830, *6 (N.D.N.Y. Dec. 4, 2017). The Court further acknowledges that Dr. Jenouri use of terms such as "moderate to marked," standing alone, does not render his opinion "too vague" to assess. As this Court has set forth

previously:

> moderate limitation is not inconsistent with a finding that an individual can engage in frequent, but not constant activity. See Parks v. Comm'r of Soc. Sec., 2016 WL 590227, at *7 (N.D.N.Y. Feb. 11, 2016). Nor does the Court find that Dr. Lorensen's opinion is too vague to support the ALJ's RFC. Plaintiff cites Curry v. Apfel, 209 F.3d 117, 123-24 (2d Cir. 2000) as holding that vague terms such as 'moderate' restrictions are insufficient bases for making an RFC determination. While this general statement may still be true, more recent cases have held that when there is other medical evidence in addition to an RFC evaluation using terms such as 'mild' and 'moderate,' such terms may properly be used in the RFC analysis. Silsbee v. Colvin, 2015 WL 4508599, at *14 (N.D.N.Y. July 23, 2015) (citing Tankisi v. Commissioner of Soc Sec., 521 Fed. Appx. 29, 34 (2d Cir. 2013)).[14] As such, the mere use of the word "moderate" does not render an opinion so vague as to not provide substantial evidence for an RFC determination. See, e.g., Flake v. Comm'r of Soc. Sec., 2016 WL 7017355, at *9 (N.D.N.Y. Nov. 10, 2016), report and recommendation adopted, 2016 WL 7017396 (N.D.N.Y. Dec. 1, 2016) (citing cases).

Jennifer Lee W. v. Berryhill, No. 5:18-CV-64 (DJS), 2019 WL 1243759, at *5 (N.D.N.Y. Mar. 18, 2019); but see Ahmed A. J. v. Saul, 3:18-CV-00197, 2019 WL 4671513, at *6 (N.D.N.Y. Sept. 25, 2019) (concluding that the consultative examiner's finding of "moderate to marked limitations in walking and standing for long periods does not, without more, provide support for the RFC" as "moderate to marked limitations is vague, and without an opinion as to the amount of time Plaintiff could stand or walk in an eight hour day, it fails to provide substantial evidence supporting the ALJ's determination.").

This Court has held that a medical opinion was not impermissibly vague where

---

[14] The plaintiff in Silsbee was represented by the same counsel in the case currently before the Court.

the conclusion was "well supported by [the doctor's] extensive examination." Waldau v. Astrue, No. 5:11-CV-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec. 21, 2003); Mauzy v. Colvin, No. 5:12-CV-866, 2014 WL 582246, at *9 (N.D.N.Y. Feb. 13, 2014). Courts in this Circuit have also held that medical source statements which provide "vague" language may be rendered "more concrete" by the facts in the underlying opinion and by other opinion evidence in the record. See Davis v. Massanari, No. 00-CV-4330, 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001) (concluding that a consultative examiner's opinion was not too vague where "the facts underlying that opinion and the other medical opinions in the record lend it a more concrete meaning"); see also Sweeting v. Colvin, No. 12-CV-0917, 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (rejecting the plaintiff's contention that consultative examiner's use of the term "moderate" was vague where the consultative examiner made specific findings based on physical examination of the plaintiff); Melton v. Colvin, No. 13-CV-6188, 2014 WL 1686827, at *13 (W.D.N.Y. Apr. 29, 2014) (holding that substantial evidence supported the ALJ's RFC determination that the plaintiff could perform sedentary work where consultative examiner opined that the plaintiff had moderate limitations in lifting and carrying and other objective evidence in the record to supported this determination). However, "other Courts have found that a physician's assessment that a plaintiff has 'marked' limitations is not necessarily consistent with an RFC limiting the Plaintiff to 'occasionally' performing those same activities." Buczynski v. Comm'r of Soc. Sec., 1:17-CV-01126, 2019 WL 5540880, at *4 (W.D.N.Y. Oct. 18, 2019) (citing Edwards v. Comm'r, No. 16-CV-948, 2018 WL 5859518, at *5 (W.D.N.Y. Nov. 9, 2018); Oney v.

Colvin, No. 1:14-CV-00720, 2017 WL 1054914, at *2-3 (W.D.N.Y. Mar. 21, 2017).

Light work, as defined in the regulations, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Further,

> Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work,[15] unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). SSR 83-14 provides that light work generally involves occasional stooping ("bending the body downward and forward by bending the spine at the waist"), and defines "occasional" as "from very little up to one-third of the time." Id.; see also SSR 96-6p (defining "occasionally"). Further, SSR 83-14 explains, "since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Id.

Here, plaintiff is correct that, under the specific facts of this case, Dr. Jenouri's conclusion that plaintiff had moderate to marked restrictions in walking, standing, sitting long periods, bending, stair climbing, lifting or carrying is too vague. Although, as

---

[15] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

detailed extensively above, "a claimant is not necessarily rendered disabled simply because he or she has moderate physical limitations.  Under these circumstances, however, the ALJ must discuss and provide reasons tending to support the finding that, despite the moderate limitations . . . [the claimant] could still perform light work." <u>Otts v. Colvin</u>, No. 15-CV-6731-FPG, 2016 WL 6677192, at *4 (W.D.N.Y. Nov. 14, 2016); <u>Edwards</u>, 2018 WL 5859518, at *5 ("If the ALJ is in agreement that plaintiff has a marked limitation as to climbing stairs, remand is necessary for the ALJ to explain how a marked limitation in that area is consistent with occasional stair climbing. The Social Security Regulations define 'occasionally' as 'occurring from very little up to one-third of the time.' The ALJ does not explain how a marked limitation would allow plaintiff to spend up to one-third of his work day climbing stairs.") (internal citation omitted).[16]

Here, Dr. Jenouri's moderate-to-marked limitations finding is insufficient to support the ALJ's RFC.  Although the ALJ accorded Dr. Jenouri's opinion "significant weight," he does not reject those portions of Dr. Jenouri's opinion opining moderate-to-marked limitations in several areas of function, yet does not account for moderate-to-marked limitations in the RFC beyond a limitation to occasional fine motor activities. Neither Dr. Jenouri's opinion nor the ALJ's decision explains how light work is consistent with moderate to marked limitations in walking, standing, sitting long periods, bending, stair climbing, lifting, or carrying, as light work would necessarily require engaging in many of these activities for up to one third of the day and as much as two-

---

[16] The Court agrees with defendant that a moderate to marked limitation does not necessarily preclude the performance of light work, Dkt. No. 15 at 9 (quoting <u>Dierdre R. v. Comm'r</u>, No. 15-CV-295 (TWD), 2018 WL 4565769, a *8 n.7 (N.D.N.Y. Sept. 24, 2018).

thirds of the day for standing and walking.  SSR 83-14; <u>Buczynski</u>, 2019 WL 5540880,

at *4 (noting, where the medical opinion concluded marked limitations and the RFC

limited the plaintiff to occasionally performing those activities, the RFC was

unsupported by substantial evidence as it "does not include any explanation as to how

limiting Plaintiff to occasionally using his right arm/hand is consistent with Dr.

Balderman's opinion that Plaintiff had marked limitations for performing those activities.

Without this additional information, the Court is unable to discern how the ALJ arrived at

his conclusion that the RFC is supported by Dr. Balderman's opinion[.]").

Even if the Court were to assume that the ALJ implicitly rejected that portion of

Dr. Jenouri's findings,[17] without some analysis or explanation before the Court upon

which the ALJ based his findings that plaintiff could stand, walk, sit, bend, climb stairs,

lift, and carry for up to one-third of the day (and as much as two-thirds of the day for

standing and walking), the Court cannot conclude that the RFC finding is based on

substantial evidence.  These facts differ from those cases wherein the Court could rely

on other medical opinion evidence or where the medical expert's examination findings

sufficiently support the ALJ's logic.  <u>See</u> <u>Mancuso v. Colvin</u>, No. 12-CV-642S, 2013 WL

3324006, *3 (W.D.N.Y. July 1, 2013) (noting that "an expert's opinion that uses vague

phrases may not constitute substantial evidence to support an RFC determination when

it is 'accompanied by no additional information, so as to prevent the ALJ, as a

_____

[17] It is not clear that the ALJ did reject these findings, however.  Immediately after according Dr.
Jenouri's medical assessment significant weight and explicitly reciting Dr. Jenouri's moderate to marked
limitations, the ALJ indicates that the claimant's activities of daily living "also support my conclusion,"
suggesting that he finds that Dr. Jenouri's limitations of moderate to marked limitations "support" a finding
of an ability to engage in light work.  T at 17.

layperson, from being able to make the necessary inference whether [p]laintiff can perform the particular requirements of a specified type of work.") (citing <u>Burgess v. Astrue</u>, 537 F.3d 117, 128-29 (2d Cir. 2008)). Beyond noting plaintiff's reported activities of daily living, the only explicit reference the ALJ makes to Dr. Jenouri's examination findings was that plaintiff did not use assistive devices during the exam. T at 16. Further, the ALJ essentially rejected the only other medical opinion of record, Nurse Berry (though it is noted that such opinion did not explain her opined limitations on these areas of function).[18] As there is evidence in the record to support a conclusion that plaintiff may have moderate to marked limitations in these areas of function, including a medical opinion that the ALJ accorded significant weight, reliance on plaintiff's activities of daily living, without more, would fail to sufficiently explain the ALJ's logic in concluding that plaintiff could perform these functions up to one third of the work day. "In the absence of a medical opinion to support the ALJ's finding as to [Plaintiff]'s ability to perform [light] work, it is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . . [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he [or she] is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him [or her].'" <u>Balsamo</u>, 142 F.3d at 81 (quoting <u>McBrayer v. Sec. of Health and Human Servs.</u>, 712 F.2d 795, 799 (2d Cir. 1983) (internal quotation marks and citations omitted), citing <u>Filocomo v.</u>

---

[18] As noted above, however, the Court does find that the ALJ's review of Nurse Berry's opinion is supported by substantial evidence.

<u>Chater</u>, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) (citation omitted).

Although defendant argues that plaintiff ignores the fact that Dr. Jenouri's opinion opined moderate-to-marked limitations, not solely marked limitations, the Court does not find that Dr. Jenouri's conclusion of moderate-to-marked limitations, as opposed to solely marked, ameliorates the ALJ's error because it is unclear where Dr. Jenouri believed plaintiff fell on this range or how the ALJ interpreted these moderate-to-marked limitations in walking, standing, sitting, bending, stair climbing, lifting, and carrying. Therefore, the Court cannot conclude that the ALJ's RFC finding is based on substantial evidence as it relates to plaintiff's abilities to walk, stand, sit, bend, stair climb, lift, and carry. The matter must be remanded for further assessment of plaintiff's ability to perform the requirements of light work given Dr. Jenouri's conclusion that plaintiff has moderate to marked limitations in walking, standing, sitting, bending, stair climbing, lifting, and carrying, and the ALJ's failure to incorporate such limitations into the RFC or explain his rejection of these opined limitations, despite his accordance of great weight to this opinion. As the Court finds that remand is required, the Court declines to address plaintiff's remaining arguments.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings, Dkt. No. 9, is **GRANTED**; and it is further

**ORDERED**, that defendant's Motion for Judgment on the Pleadings, Dkt. No. 15,

is **DENIED**, and the matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Memorandum-Decision and Order.

      **IT IS SO ORDERED**.

Dated: March 12, 2020
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge